FILED
2016 Aug-02  PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CONSUELO MENDOZA,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:15-CV-451-RDP** |
| | } | |
| **CAROLYN W. COLVIN, Acting** | } | |
| **Commissioner, Social Security** | } | |
| **Administration** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Consuelo Mendoza brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  *See also*, 42 U.S.C. §§ 405(g) and 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

Plaintiff filed her applications for disability, DIB, and SSI on April 23, 2012.  (Tr. 163-70, 196).  Plaintiff alleged disability beginning on November 1, 2009 but later amended her alleged onset date to August 25, 2010.  (Tr. 163-70, 182).  The Social Security Administration initially denied Plaintiff's applications on September 6, 2012.  (Tr.  97-106).  After Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), a hearing was conducted on June 3, 2013. The ALJ denied Plaintiff's claims for disability, DIB, and SSI on August 19, 2013

(Tr. 12, 25, 112), determining that, contrary to her allegations, Plaintiff had not been under a disability as defined in the Act since August 25, 2010, the alleged onset date.  (Tr. 13).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner and a proper subject of this court's appellate review.

## II.    Facts

Plaintiff was forty-nine years old at the time of her hearing.  (Tr. 196).  She has a GED (Tr. 201) and past relevant work experience as a self-service laundry and dry-cleaning attendant, kitchen helper, laundry operator, and short order cook.  (Tr. 24, 62-63).  Plaintiff alleges that she has been disabled since August 25, 2010 because of migraines, anxiety attacks, high blood pressure, and diabetes.  (Tr. 201).

During her alleged period of disability, Plaintiff's treating physician was Dr. Wayne Jones.  (Tr. 312-36, 337-48, 367-68, 369-73, 374-93).  Dr. Jones treated Plaintiff for several impairments, including hypertension, back pain, shoulder pain, diverticulitis, and headaches. (*Id.*).  X-rays taken of Plaintiff's cervical spine on June 2010 showed no acute findings (Tr. 301-03), x-rays of her thoracic spine showed mild degenerative change (*id.*), and x-rays of her shoulder were normal. (*Id.*). Additionally, Dr. Jones prescribed Plaintiff Zoloft[1] for depression and treated her for migraine-type headaches on four occasions. (Tr. 313, 321, 324, 338, 341, 385, 388).  Dr. Jones treated Plaintiff's migraine-type headaches with Lortab[2], Flexeril[3], and Phenergan[4]. (Tr. 342, 385, 389).

---

[1] Zoloft, a selective serotonin reuptake inhibitor ("SSRI"), is used to treat depression, social anxiety disorder, panic attacks, and other disorders. *See* National Institute of Health, *Sertraline*, https://medlineplus.gov/druginfo/meds/a697048.html (last visited July 15, 2016).

[2] Lortab is hydrocodone and acetaminophen combination that is used to relieve moderate to moderately severe pain. *See* U.S. National Library of Medicine, *Hydrocodone/Acetaminophen (By mouth)*, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0010590/ (last visited July 15, 2016).

On August 16, 2012, Dr. John R. Haney, a licensed psychologist, conducted a mental examination of Plaintiff on behalf of the Social Security Administration.  (Tr. 350-51).  Dr. Haney concluded that Plaintiff appeared sad and had considerable difficulty performing most simple problems in change making and arithmetic, but she was oriented to time, place, person, and situation, and was able to find abstract similarities between paired objects and interpret simple proverbs.  (Tr. 350).  Dr. Haney also noted no psychotic symptoms and concluded that Plaintiff's recent and remote memory appeared intact and conversation appeared logical and goal directed.  (*Id.*).  Additionally, Dr. Haney concluded that Plaintiff would probably require continued assessment and treatment of physical problems and depressive systems and stated that Plaintiff may be referred to a local mental health center.  (Tr. 351).  Furthermore, Dr. Haney opined that Plaintiff's ability to function in most jobs appeared moderately to severely impaired due to chronic physical and emotional limitations.  (*Id.*).  His diagnosis was major depressive disorder, single episode, moderate; rule out borderline intellectual functioning; and anxiety disorder, not-otherwise-specified with panic disorder features.  (*Id.*).

On August 20, 2012, Dr. Bhavna Sharma conducted a consultative physical examination of Plaintiff.  (Tr. 352-55).  Plaintiff's chief complaint to Dr. Sharma was joint pain, but she acknowledged that pain medication, heat, and rest helped relieve the pain.  (Tr. 353).  Plaintiff also reported that her diabetes and hypertension were well controlled by medication and that pain medicine also helped her migraine headaches.  (*Id.*).  Dr. Sharma noted that Plaintiff was able to lie flat on the examination table and was able to sit up and get on and off of the examination

---

[3] Flexeril is a muscle relaxant used, in addition to other measures, to relieve pain and discomfort caused by strains, sprains, and other muscle injuries. *See* U.S. National Library of Medicine, *Cyclobenzaprine*, https://medlineplus.gov/druginfo/meds/a682514.html (last visited July 15, 2016).

[4] Phenergan, a promethazine, is used to control nausea, vomiting, and other symptoms. *See* U.S. National Library of Medicine, *Promethazine*, https://medlineplus.gov/druginfo/meds/a682284.html (last visited July 15, 2016).

table without support.  (Tr. 354).  Dr. Sharma concluded that Plaintiff's gait was normal without support. (Tr. 355). Although she was unable to squat, her heel walk, toe walk, and tandem walk were all normal. (*Id*.). Furthermore, Dr. Sharma concluded that Plaintiff had 5/5 muscle strength in four extremities, normal grip in both hands, Romberg normal, and manipulation of fine and gross intact.  (*Id*.).  Plaintiff's range of motion chart was normal.  (Tr. 357-58).

On September 6, 2012, Dr. Samuel D. Williams, a non-examining state agency medical expert, reviewed the evidence and concluded that Plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry 25 pounds, and could stand, walk, or sit for six hours in an eight-hour work day.  (Tr. 79).  Dr. Williams found that Plaintiff could never climb ladders, ropes, or scaffolds and should avoid exposure to unprotected heights.  (Tr. 79-80).  Dr. Williams also concluded that Plaintiff would be able to understand and remember short and simple instructions and concentrate for two-hour periods.  (Tr. 81-82).  According to Dr. Williams, Plaintiff would be able to handle casual, non-intense interaction with the general public, and feedback should be supportive, tactful, and non-confrontational.  (Tr. 82).  Dr. Williams found that Plaintiff would be able to adapt and respond appropriately to gradual, infrequent, well-explained changes in the work place.  (*Id*.).  Finally, Dr. Williams found that Plaintiff's restriction of activities of daily living was moderate, difficulties in maintaining social functioning were mild, and difficulties in maintaining concentration, persistence, or pace were moderate.  (Tr. 77).  Based on these findings, Dr. Williams concluded that Plaintiff had the residual functional capacity to perform past relevant work of laundry attendant and was not disabled.  (Tr. 83-84).

On October 4, 2012, Dr. Jones wrote a letter stating that Plaintiff was unable to work and needed consideration for disability.  (Tr. 368).  He listed the following conditions that allegedly restrict Plaintiff from working: noninsulin diabetes, hypertension, diabetic neuropathy,

hyperthyroidism, degenerative disc disease, anxiety and depression, and migraine headaches. (Tr. 368).  Dr. Jones opined that Plaintiff had a difficult time standing due to back pain for long periods of time and had difficulty controlling her hypertension and blood glucose due to social anxiety and depression. (*Id*.).  Dr. Jones stated that these conditions made it difficult for Plaintiff to keep a job.  (*Id*.).

On October 8, 2012, Plaintiff saw Dr. Jones in order to have forms filled out for her disability claim. (Tr. 19, 376). This was Plaintiff's latest visit with Dr. Jones as of the June 3, 2013 hearing. (*Id*.). Dr. Jones filled out a checklist regarding Plaintiff's headaches and opined that Plaintiff had headaches three to four times per week and the symptoms included vertigo, nausea, malaise, photosensitivity, visual disturbances, mood changes, and mood changes/inability to concentrate.  (Tr. 370).  Dr. Jones opined that bright lights, lack of sleep, noise, and stress triggered Plaintiff's headaches, and lying in a dark room would make the headaches better.  (*Id*.).  When asked to identify positive test rests and objective signs of the Plaintiff's headaches, Dr. Jones selected "tenderness" and "impaired sleep."  (*Id*.).  Dr. Jones also opined that the headaches would cause Plaintiff to be absent from work more than four times a month, and Plaintiff would need to take unscheduled breaks daily in order to lay down for hours.  (Tr. 373).

Finally, Dr. Jones completed a physical capacities evaluation ("PCE") report on May 23, 2013.  (Tr. 395).  Dr. Jones opined that, in an eight-hour work day, Plaintiff could sit for one hour, stand for twenty minutes, and walk 500 feet.  (*Id*.).  Dr. Jones stated that Plaintiff could occasionally lift and carry up to ten pounds but could never lift or carry more than that.  (*Id*.).  According to Dr. Jones, Plaintiff could use her left hand for simple grasping and could not use either foot for operating foot controls.  (*Id*.).  Furthermore, Dr. Jones opined that Plaintiff could

occasionally bend but could never squat, crawl, climb, or reach above her shoulder.  (*Id.*).  Dr. Jones also stated that Plaintiff should be totally restricted from activities involving unprotected heights, moving machinery, and marked changes in temperature and humidity; additionally, Dr. Jones selected moderate restriction of activities involving driving automotive equipment and exposure to dust, fumes, and gases.  (*Id.*).

At the June 3, 2013 hearing, Plaintiff testified that, when she felt well, she prepared meals for her daughter, cleaned, and did laundry.  (Tr. 37).  Plaintiff also testified that she drives herself to the store at least three times per month, shops for about an hour each time, and receives help bringing the groceries into her home.  (Tr. 37-38).  This testimony was consistent with Plaintiff's statements in the Function Report-Adult that Plaintiff filled out on May 21, 2012, as well as the third-party report filled out by Plaintiff's daughter.  (Tr. 206-13, 218-25).  In the Function Report, Plaintiff noted some limitations in performing personal care but stated that she cares for pets and tries to do household chores daily.  (Tr. 219-20).  Plaintiff also stated that she tries to have a potluck at least once a month.  (Tr. 222).

## III.   ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the

claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and has the following severe impairments: degenerative disc disease, obesity, and depression.  (Tr. 14).  The ALJ further determined that Plaintiff "does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix1." (Tr. 15). The ALJ also found the following:

> [Plaintiff] has the residual functional capacity to perform medium
> work as defined in 20 CFR 404.1567(c) and 416.967(c), lifting
> and/or carrying 50 pounds occasionally and up to 25 pounds
> frequently. She can sit for six hours and stand and/or walk for six
> hours in an eight-hour workday, with normal breaks . . ..

(Tr. 17).  The ALJ also found that Plaintiff can frequently balance, stoop, kneel, crouch, crawl,

and climb ramps and stairs; however, she should not climb ladders, ropes, or scaffolds.  (*Id.*).  In

light of this RFC determination and the testimony of the vocational expert, the ALJ concluded

that Plaintiff is capable of performing past relevant work as a kitchen helper and a laundry

operator and has not been under a disability, as defined in the Social Security Act, since August

25, 2010.  (Tr. 13, 24).

## IV.     Plaintiff's Argument for Reversal

On appeal, Plaintiff makes the following arguments: (1) the ALJ erred by not

acknowledging Plaintiff's migraine headaches as a severe impairment (Pl.'s Mem. 5); (2) the

ALJ erred by not giving substantial weight to Dr. Haney's psychological evaluation (Pl.'s Mem.

8); and (3) the ALJ erred by failing to properly apply the treating physician rule to the report and

opinion of Dr. Jones (Pl.'s Mem. 10).

## V.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to

sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847

F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42

U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by

"substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**VI.    Discussion**

After careful review, the court concludes the ALJ's decision is supported by substantial evidence and correct legal standards have been applied.

**A.    Substantial evidence supports the ALJ's finding that Plaintiff's headaches are non-severe.**

A severe impairment is "any impairment or combination of impairments which significantly limits [Plaintiff's] physical or mental ability to do basic work activities . . .." 20 C.F.R. § 404.1520(c) (2016).  Plaintiff bears the burden of showing she has a severe impairment. 20 C.F.R. § 404.1512(a) (2016).  Plaintiff contends that the ALJ's finding that Plaintiff's migraine headaches were non-severe is not supported by substantial evidence.  (Pl.'s Mem. 5-7). The court disagrees.

The record indicates that Plaintiff only sought treatment for migraine-type headaches on four occasions.  (Tr. 338, 341, 385, 388).  The record also reveals that Plaintiff had normal neurological exam results on multiple occasions (Tr. 269, 282, 284, 315, 317, 320, 323, 326, 340, 343, 346, 348, 355, 386, 390), and the ALJ noted that Plaintiff had "neither sought nor received any further treatment by a neurologist" and had not sought emergency treatment or been hospitalized for her headaches.  (Tr. 22).  Furthermore, Plaintiff did not complain of headaches during her consultative examination with Dr. Sharma (Tr. 353-54) and told Dr. Sharma that prescription pain medications help her headaches. (Tr. 353). *See Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 856 (11th Cir. 2013) (holding that substantial evidence supported the ALJ's determination that Plaintiff's headaches were non-severe when Plaintiff told his physician that Botox treatments controlled his migraines).  Therefore, the court finds that substantial evidence supports the ALJ's determination that Plaintiff's headaches are non-severe.[5]

### B.      The ALJ was not required to defer to the opinion of Dr. Haney.

Plaintiff  argues that the ALJ engaged in what is known as "sit and squirm" jurisprudence by substituting his opinion for the opinion of Dr. Haney in regards to Plaintiff's psychological evaluation.  (Pl.'s Mem. 8-10); *see Freeman v. Schweiker*, 681 F. 2d 727, 731 (11th Cir. 1982) (discussing "sit and squirm" jurisprudence).  Plaintiff bases her allegation on the fact that the ALJ gave no weight to Dr. Haney's opinion.  (*Id.*).  However, the ALJ's opinion indicates that he intended to give no weight to Dr. Haney's opinion regarding Plaintiff's *physical* condition only. (Tr. 23).  Considering that Dr. Haney is a psychologist and not a medical doctor, his opinion

---

[5] Furthermore, even if the court were to determine that the ALJ erred in finding Plaintiff's headaches were non-severe, this is harmless error. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had a severe impairment: and that finding is all that step two requires.").  The ALJ considered all of Plaintiff's impairments in making his RFC determination (Tr. 17-24); therefore, the determination that Plaintiff's headaches were non-severe was not dispositive.

regarding Plaintiff's physical condition was entitled to less weight than a physician's. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 818-19 (11th Cir. 2011); *see* 20 C.F.R. § 404.1527(d)(5) (2016) (explaining that more weight is given to a physician's opinion when it regards an issue related to his or her area of specialty).

Furthermore, the ALJ was not required to defer to Dr. Haney's opinion. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("An ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician."). Additionally, "the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion." *Id.* (citing *Syrock v. Heckler*, 764 F. 2d 834, 835 (11th Cir. 1985)). Indeed, the ALJ expressly noted that he gave little weight to Dr. Haney's opinion, "as he did not treat [Plaintiff] and only saw her on one occasion." (Tr. 23). There is no evidence in the record that Plaintiff was referred to a mental health physician for treatment; rather, Dr. Jones prescribed medication for Plaintiff's depression. (Tr. 313, 321, 324). Moreover, Plaintiff stated that she cleans daily, shops for groceries at least three times per month, and tries to have a potluck at least once a month. (Tr. 37-38, 222). Therefore, the ALJ's finding that "the moderate to severe impairments [Dr. Haney] opined are inconsistent with the treatment [Plaintiff] received and the continuing level of daily activities reported by [Plaintiff]" is supported by the record. (Tr. 23).

### C. The ALJ had good cause to give less weight to Dr. Jones's opinion.

It is well-established in the Eleventh Circuit that "'the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary.' [However, a] treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'" *Crawford v. Comm'r of*

*Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, at 1140 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

Dr. Jones completed a physical capacities evaluation ("PCE") report on May 23, 2013 addressing Plaintiff's capacity to work.  (Tr. 395).  The ALJ found that Dr. Jones's report "is unsupported by the medical evidence and is inconsistent with other doctors who have examined [Plaintiff]."  (Tr. 20). First, although Dr. Jones opined that Plaintiff had multiple limitations and could not use either foot to operate foot controls (Tr. 395), Plaintiff testified that she drives herself to the store at least three times per month, and shops for about an hour each time.  (Tr. 37-38).  Second, the record does not indicate that Dr. Jones placed any restrictions on Plaintiff, and Dr. Jones never opined reasons in the medical record as to why Plaintiff was "not at all" able to squat, crawl, climb, or reach above her shoulder.  (Tr. 395).  Finally, Dr. Jones's opinion was not supported by the findings of Dr. Sharma's consultative physical examination of Plaintiff. (Tr. 353-58).

Furthermore, Dr. Jones's checklist regarding Plaintiff's headaches (Tr. 370) is also unsupported by objective medical evidence.  The record indicates that Plaintiff had normal neurological exam results on multiple occasions (Tr. 269, 282, 284, 315, 317, 320, 323, 326, 340, 343, 346, 348, 355, 386, 390), and the ALJ noted that Plaintiff had "neither sought nor received any further treatment by a neurologist" and had not sought emergency treatment or been hospitalized for her headaches.  (Tr. 22).  Additionally, Plaintiff did not complain of headaches during her consultative examination with Dr. Sharma and told Dr. Sharma that prescription pain medications help her headaches.  (Tr. 353-54).  Therefore, The ALJ had good cause to give little weight to most of Dr. Jones's conclusions, given that Dr. Jones's opinions were not supported by substantial evidence.

**VII.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 2, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE